# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

THOMAS H. EWERT,

    Plaintiff,

  v.                                        Case No. 20-CV-458

KILOLO KIJAKAZI,
Acting Commissioner of Social Security[1],

    Defendant.

---

## DECISION AND ORDER

---

Thomas H. Ewert seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for a period of disability and disability insurance benefits and an application for supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision will be reversed and the case remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

Ewert filed an application for a period of disability and disability insurance benefits on November 18, 2016 and an application for supplemental security income on November 22, 2016. (Tr. 13.) In both applications, Ewert alleged disability beginning on June 16, 2015 due to stage four renal failure and sleep apnea. (Tr. 62, 73.) Ewert's applications were denied initially and upon reconsideration. (Tr. 13.) Ewert filed a request for a hearing and a hearing

---

[1] The court has changed the caption to reflect Kilolo Kijakazi's recent appointment as acting commissioner.

was held before an Administrative Law Judge ("ALJ") on September 5, 2018. (Tr. 30–59.) Ewert testified at the hearing, as did Mary A. Harris, a vocational expert. (Tr. 30.)

In a written decision issued March 4, 2019, the ALJ found that Ewert had the severe impairments of stage III chronic kidney disease, hypertension, sleep apnea, and degenerative change of the right shoulder. (Tr. 16.) The ALJ found that Ewert did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (Tr. 17.) The ALJ further found that Ewert had the residual functional capacity ("RFC") to perform light work, with the following limitations: can never climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs; can have only occasional exposure to hazards, defined as work with machinery having moving mechanical parts, occasional use of commercial vehicles, and occasional exposure to unprotected heights. (Tr. 18.)

While the ALJ found that Ewert was incapable of performing his past relevant work as a construction superintendent and auto body repairperson, the ALJ found that given Ewert's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that he could perform. (Tr. 22–23.) As such, the ALJ found that Ewert was not disabled from June 16, 2015 until the date of the decision. (Tr. 24.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Ewert's request for review. (Tr. 1–6.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v.*

*Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. *Application to this Case*

Ewert argues that the ALJ erred by failing to properly evaluate his subjective symptoms and the medical opinion evidence. I will address each argument in turn.

#### 2.1 Evaluation of Subjective Symptoms

Ewert argues that the ALJ failed to accurately present the medical record with respect to his impairments before discounting his allegations of disabling symptoms. (Pl.'s Br. at 9, Docket # 14.) As such, Ewert contends there is no accurate and logical bridge from the

3

Case 1:20-cv-00458-NJ   Filed 09/03/21   Page 3 of 12   Document 19

evidence to the ALJ's conclusion that Ewert's statements regarding his symptoms were inconsistent with the record. (*Id.*)

The Commissioner's regulations set forth a two-step test for evaluating a claimant's statements regarding his symptoms. First, the ALJ must determine whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p. Second, if the claimant has such an impairment, the ALJ must evaluate the intensity and persistence of the symptoms to determine the extent to which they limit the claimant's ability to work. *Id.* If the statements are not substantiated by objective medical evidence, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record and considering a variety of factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes; treatment, other than medication, used for relief of the symptoms; other measures the claimant uses to relieve the symptoms; and any other factors concerning the claimant's functional limitations due to the symptoms. *Id.*

In evaluating Ewert's subjective symptoms, the ALJ first recounted Ewert's allegations that he experienced debilitating back pain caused by chronic kidney disease and fatigue caused by some combination of chronic kidney disease, hypertension, and sleep apnea. (Tr. 19.) The ALJ noted Ewert's allegations that his impairments affected his ability to lift, squat, bend, stand, reach, walk, sit, and kneel; that he often experiences a sharp pain in the lower right side of his back and is unable to sit or stand for too long; that he is sometimes too exhausted to do chores; and that he naps between two and three hours each afternoon. (*Id.*)

While the ALJ found that Ewert's medically determinable impairments could reasonably be expected to cause his alleged symptoms, the ALJ found that Ewert's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.*)

The ALJ found that Ewert's alleged symptoms from hypertension and chronic kidney disease had some support in the record. (Tr. 20.) Specifically, the ALJ found that while Ewert's complaints of back pain were consistent with the record, the record also demonstrated that Ewert's hypertension and chronic kidney disease were generally controlled with medication and physical therapy. (*Id.*) The ALJ noted that Ewert's last hypertensive event was apparently caused by noncompliance with medication instructions and once in the hospital, Ewert's blood pressure came down "fairly quickly." (*Id.*, citing Tr. 693.) The ALJ further noted Ewert's testimony that he had not used illicit drugs, except marijuana, for many years; that his chronic use of NSAIDs had apparently ceased; and that a June 2018 ultrasound of his kidneys was "essentially normal." (*Id.*)

As for Ewert's allegations of disabling fatigue and drowsiness from sleep apnea, the ALJ cited records regarding the beneficial use of—and Ewert's noncompliance with—continuous positive airway pressure ("CPAP") treatment. (*Id.*) First, the ALJ cited an August 2017 record from nephrologist Dr. Syed Shah, which indicated that Ewert's complaints of chronic fatigue and decreased sleeping during a hospitalization in January 2016 were "in [the] setting of noncompliance with CPAP after he was diagnosed with [obstructive sleep apnea]." (Tr. 740.) Next, the ALJ cited an August 2018 record in which Dr. Shah noted that Ewert had slightly better CPAP compliance, denied fatigue, and reported improved energy levels. (Tr. 734, 736.) The ALJ further cited records from a monitored sleep study completed in

5

March 2018, where a CPAP machine was reported as effective and well-tolerated and Ewert "described sleep as better than usual and stated that he was not as tired." (Tr. 728.) Aside from the records related to CPAP treatment, the ALJ cited an August 2018 Medical Source Statement in which Ewert's treating physician noted that his chronic fatigue was due to sleep apnea. (Tr. 768.) The ALJ also noted that Ewert's active problem list from records in August 2018 included marijuana abuse, and Ewert admitted to routine marijuana use at the hearing (Tr. 20–21.)

The ALJ's subjective symptom evaluation with respect to Ewert's chronic kidney disease is not supported by substantial evidence. Again, the ALJ found that Ewert's chronic kidney disease and hypertension were "generally controlled with medication and physical therapy." (Tr. 20.) Although the ALJ cited evidence demonstrating that Ewert's hypertension was at least partly caused by noncompliance with medication, the ALJ did not explain how compliance with hypertension medication impacted Ewert's chronic kidney disease or the extent of Ewert's symptoms caused by the disease. Further, the ALJ's rationale for finding that physical therapy controlled Ewert's chronic kidney disease is unclear. Ewert began attending cardiac rehabilitation sessions in July 2018 after a hospitalization for uncontrolled hypertension that resulted in a heart attack. (Tr. 773.) Despite finding that these cardiac rehabilitation sessions controlled Ewert's chronic kidney disease (and hypertension), the ALJ never explained or even suggested how the sessions discounted Ewert's allegations of back pain or fatigue.

Further, the ALJ cited testimony that Ewert had not used illicit drugs except for marijuana for many years and reports that his chronic use of NSAIDs had ceased. (Tr. 20.) However, the ALJ failed to explain how these preventative measures discounted Ewert's

6

allegations of disabling symptoms from chronic kidney disease. Finally, the ALJ noted that a June 2018 ultrasound of Ewert's kidneys was "essentially normal," without stating the significance of such a finding with respect to Ewert's reported symptoms. Ewert underwent a renal ultrasound in June 2018 during a hospital stay for hypertension to evaluate for renal artery stenosis.[2] (Tr. 663.) The results indicated that, except for a small right intrarenal cyst, the ultrasound was normal. (*Id.*) However, there is no indication that a normal renal ultrasound is inconsistent with allegations of pain and fatigue. The ALJ discounted Ewert's symptoms based on a finding that his chronic kidney disease was generally controlled yet relied on evidence that did not support this conclusion. As such, remand is warranted for the ALJ to reevaluate Ewert's subjective symptoms from chronic kidney disease.

Ewert also asserts that the ALJ misrepresented the evidence regarding his hypertension in discounting his subjective symptoms—specifically, records from hospitalizations in February and June 2018. (Pl.'s Br. at 12–13.) Ewert argues that the ALJ erroneously assumed that his February 2018 hospitalization was caused by noncompliance with hypertension medication when the records at issue merely noted a *history* of noncompliance. (*Id.* at 13.) Ewert further argues that the ALJ ignored key events surrounding his June 2018 hospitalization, namely that he suffered both a heart attack and acute kidney injury and had blood pressure levels that were difficult to control throughout his stay. (*Id.* at 13–14.)

I do not find, however, that remand is required for further consideration of Ewert's hypertension symptoms. The ALJ did assume that Ewert "apparently had not been compliant

---

[2] "Renal artery stenosis is a narrowing of arteries that carry blood to one or both of the kidneys. Most often seen in older people with atherosclerosis (hardening of the arteries), renal artery stenosis can worsen over time and often leads to hypertension (high blood pressure) and kidney damage." https://www.webmd.com/hypertension-high-blood-pressure/guide/renal-artery-stenosis-symptoms-treatments. (last visited July 5, 2021).

7

with previously prescribed treatment," (Tr. 20) in February 2018, despite Ewert's statement at the hospital that he had been taking his blood pressure medications as prescribed (Tr. 753). However, records before and after the February 2018 hospitalization support that Ewert's noncompliance with medication contributed to his uncontrolled hypertension. (Tr. 349, 683.) And beyond asserting that the ALJ was wrong about noncompliance in February 2018, Ewert does not explain how this alleged error renders the ALJ's evaluation of his subjective symptoms "patently wrong." *See Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010). Ewert further argues that the ALJ attempted to minimize the June 2018 hospitalization as "merely an episode of noncompliance." (Pl.'s Br. at 14.) However, discharge notes from June 2018 indicate Dr. Misty Johnson's opinion that Ewert had not taken his hypertension medications as prescribed. (Tr. 683.) As for the medical developments surrounding the June 2018 hospitalization that Ewert says the ALJ ignored—a heart attack, difficult to control blood pressure, and an acute kidney injury—these events do not undercut the ALJ's conclusion that Ewert's hypertension was generally controlled when compliant with medication.

Ewert next argues that the ALJ erred by discounting his allegations of fatigue from sleep apnea based on Dr. Shah's notes that he was noncompliant with CPAP treatment. (Pl.'s Br. at 14.) Ewert argues that despite Dr. Shah's reports in 2016 and 2017 that noncompliance with CPAP treatment was the reason for his fatigue, his sleep apnea was not confirmed until 2018. (*Id.*) Had the ALJ investigated the issue of noncompliance as contemplated by SSR 16-3p, Ewert argues, the ALJ would not have relied on Dr. Shah's comments in discounting his allegations. (*Id.* at 15.)

While the ALJ did rely on Dr. Shah's notes about compliance with CPAP treatment in discounting Ewert's allegations, the ALJ also cited records from a sleep study that

8

demonstrated that CPAP treatment was well-tolerated and August 2018 records where Ewert denied fatigue and stated that his energy levels were good. (Tr. 20.) As such, the ALJ did not err in concluding that CPAP treatment improved Ewert's fatigue.

### 2.2 Weight Given to Medical Opinion Evidence

Although this case is being remanded on other grounds, I will briefly address Ewert's argument that the ALJ improperly evaluated the medical opinion evidence in the record. (Pl.'s Br. at 16–22.)

An ALJ must consider all medical opinions in the record, but the method of evaluation varies depending on the source. Generally, more weight is given to the medical opinions of treating sources. 20 C.F.R. § 404.1527(c)(2).[3] If the opinion of a treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] record," the opinion must be given "controlling weight." *Id.* Even if the ALJ finds that the opinion is not entitled to controlling weight, she may not simply reject it. Social Security Ruling ("SSR") 96-2p. Rather, if the ALJ finds that a treating source opinion does not meet the standard for controlling weight, she must evaluate the opinion's weight by considering a variety of factors, including the length, nature, and extent of the claimant and the source's treatment relationship; the degree to which the opinion is supported by the evidence; the opinion's consistency with the record as a whole; and whether the source is a specialist. 20 C.F.R. § 404.1527(c).

---

[3] On January 18, 2017, the SSA published the final rules entitled "Revisions to Rules Regarding the Evaluation of Medical Evidence" in the Federal Register (82 FR 5844). The final rules became effective on March 27, 2017. For claims filed before March 27, 2017, however, the SSA continues to apply the prior rules that were in effect at the time of the ALJ's decision. https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html (last visited June 28, 2021).

The ALJ must always give "good reasons" for the weight given to a treating physician's opinion. § 404.1527(c)(2); SSR 96-2p. The ALJ must give reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. "An ALJ can reject [a treating source's] opinion only for reasons supported by substantial evidence in the record." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

On April 17, 2017, Dr. George Walcott completed an assessment of Ewert's functioning at the initial level. (Tr. 68.) Dr. Walcott opined that in an eight-hour workday, Ewert could occasionally lift or carry ten pounds, frequently lift or carry less than ten pounds, stand or walk for two hours, and sit for two hours. (*Id.*) Dr. Walcott further opined that due to ongoing stage III chronic kidney disease, Ewert would be limited to sedentary work. (*Id.*) The ALJ assigned partial weight to Dr. Walcott's opinion, finding that for reasons stated earlier in the decision, Ewert's condition was not "so limiting." (Tr. 22.) Of note, the ALJ determined, that Dr. Walcott "noted that [Ewert's] blood pressure and kidney disease was [sic] controlled, with the then most recent lab work (February 2017) showing creatine was 2.05 mg/dl, and the claimant then currently stable." (*Id.*)

Ewert argues that there is no logical bridge from the evidence to the ALJ's conclusion because the ALJ cited no evidence supporting that his chronic kidney disease was not as limiting as Dr. Walcott opined. (Pl.'s Br. at 17.) The ALJ's unsupported finding that Ewert's chronic kidney disease was generally controlled likely infects the analysis of Dr. Walcott's opinion. Further the significance of stable lab findings with respect to chronic kidney disease at the time of Dr. Walcott's opinion is unclear. Despite indicating that lab findings were then stable, Dr. Walcott nevertheless limited Ewert to sedentary work. (Tr. 65, 68.) On remand,

the ALJ will have the opportunity to reconsider whether Dr. Walcott's opinions on the effects of Ewert's chronic kidney disease are supported by the record.

Finally, Ewert argues that the ALJ gave improper reasons for discrediting the opinion of his treating physician, Dr. Richard Johnson. (Pl.'s Br. at 19.) On August 29, 2018, Dr. Johnson completed a Medical Source Statement that assessed Ewert's functional limitations. (Tr. 768.) Dr. Johnson opined that Ewert could sit for more than two hours at a time and stand for thirty minutes at a time. (Tr. 679.) Dr. Johnson further opined that Ewert could sit for about four hours in an eight-hour workday and stand/walk for less than two hours in an eight-hour workday; would need to shift positions at will from sitting, standing, or walking; and would need unscheduled, fifteen-minute breaks every one-to-two hours due to pain, chronic fatigue, and adverse effects of medications. (*Id.*) Dr. Johnson also opined that Ewert could occasionally lift/carry less than ten pounds and rarely lift/carry ten pounds; could occasionally twist, stoop, or crouch and never climb stairs or ladders; and would miss more than four days of work per month due to his impairments or treatment. (Tr. 770, 771.)

The ALJ assigned little weight to Dr. Johnson's opinion, finding that it presented an "overly restrictive analysis" of Ewert's limitations. (Tr. 22.) As to Dr. Johnson's opinion regarding Ewert's fatigue, the ALJ noted that medical evidence showed Ewert's energy levels increased with improved CPAP compliance. (*Id.*) Further, as to Dr. Johnson's opinion that Ewert could only occasionally lift less than ten pounds, rarely lift ten pounds, occasionally twist, stoop, or crouch, and never climb stairs or ladders, the ALJ found these limitations "overly restrictive and inconsistent with the body of medical evidence presented." (*Id.*)

Ewert argues that the ALJ erred by citing the beneficial use of CPAP treatment to discount Dr. Johnson's opinion regarding fatigue and failed to explain why the lifting and

11

postural limitations were not supported by the record evidence. (Pl.'s Br. at 20–21.) As this case is being remanded on other grounds, the ALJ will have the opportunity to further inquire about Ewert's CPAP treatment and more thoroughly explore whether Dr. Johnson's postural limitations are supported by the record.

## CONCLUSION

The ALJ failed to build an accurate and logical bridge from the record evidence to the conclusion that Ewert's symptoms of pain and fatigue were not disabling. As such, this case is remanded pursuant to 42 U.S.C. § 405(g), sentence four for reconsideration consistent with this decision.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 3rd day of September, 2021.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge